UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
JEAN BAPTISTE ANTOINE AND BSD 260 LLC,
               Plaintiffs and
               Counter-Defendants,      **MEMORANDUM AND ORDER**

     -against-                    18-CV-05850(KAM)(VMS)

AMERICAN SECURITY INSURANCE COMPANY,
WELLS FARGO N.A. AS TRUSTEE FOR OPTION
ONE MORTGAGE LOAN TRUST 2007-5 ASSET-
BACKED CERTIFICATES, SERIES 2007-5, AND
WELLS FARGO BANK N.A. AS ASSIGNEE OF
OCWEN LOAN SERVICING, LLC,
               Defendants,

WELLS FARGO, Counter-Claimant.
---------------------------------------X
**MATSUMOTO, United States District Judge:**

       On February 20, 2019, the court directed plaintiffs

and counter-defendants, BSD 260 LLC ("BSD"), a New York limited

liability company, and Jean Baptiste Antoine ("Antoine")

(collectively, "plaintiffs") and defendants and counter-

claimants Wells Fargo N.A. as Trustee for Option One Mortgage

Loan Trust 2007-5 Asset-Backed Certificates, Series 2007-5, and

Wells Fargo Bank N.A. as Assignee of Ocwen Loan Servicing, LLC

("Ocwen") (collectively, "Wells Fargo" or "defendant") to brief

a preliminary issue that bears on the underlying action.

Specifically, the parties dispute (i) which party is entitled to

insurance proceeds from an insurance policy that Wells Fargo's

predecessor, Ocwen, purchased because Antoine failed to comply

with his obligation to purchase such insurance, pursuant to the

mortgage that secured the mortgagee's interest in real property that had sustained fire damage, located at 560 Fountain Avenue, Brooklyn, New York 11208 (the "Property") and (ii) whether the Power of Attorney ("POA") at issue is valid and enforceable. (Dkt. Order dated 2/20/2019.)  Presently before the court is plaintiffs' "motion to compel the acceptance of the December 4, 2014 Power of Attorney," which defendant opposes.[1]  (ECF No. 26; ECF No. 27.)

Specifically, Antoine, through Joseph Katz ("Katz"), who purports to act on behalf of Antoine, asserts that Antoine had granted Katz a valid POA granting Katz "broad powers to act on his behalf 'for the purpose of litigating, selling, and conveying concerning [sic] the property located at 560 Fountain Avenue, Brooklyn, NY 11208."  (ECF No. 26, Pl. Mem. 3.)  Should the court find that the POA is valid and enforceable, then Katz will be considered Antoine's representative for purposes of these proceedings.  On March 12, 2019, plaintiffs submitted their memorandum.  (*See* ECF No. 26-1, Plaintiffs' Memorandum of Law in Support of the POA ("Pl. Mem.").)  On March 29, 2019, Wells Fargo filed its opposition.  (*See* ECF No. 27, Opposition re: Declaration ("Def. Mem.").)  On April 4, 2019, plaintiffs

---

[1] Because there is no such "motion to compel the acceptance of [a document]" under the Federal Rules of Civil Procedure or the Local Rules, the court construes the instant proceeding as plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").

filed their reply memorandum.  (*See* ECF No. 29-2, Memorandum in Further Support of the POA ("Reply Mem.").)

For the reasons stated below, and based on the admissible evidence proffered by the parties, the court **grants** plaintiffs' Rule 56 motion for partial summary judgment (the "Motion") that the POA is valid and enforceable.  Thus, Katz is authorized to represent Antoine's interests in this litigation. The court expressly reserves decision as to which party or parties are the rightful beneficiaries of the insurance proceeds at issue because numerous disputes of material fact remain, as set forth below.

**BACKGROUND**

This case concerns insurance proceeds, currently held by defendant American Security Insurance Company ("ASIC"), which are payable under the ASIC insurance policy to Antoine and Wells Fargo as a result of a fire that allegedly occurred on Antoine's property on June 27, 2014.  At the time of the fire, Antoine allegedly owned the Property, subject to a note and secured by a mortgage. (ECF No. 13, Complaint ("Compl.") 5; ECF No. 26-4, Ex. C, Residential Contract of Sale ("Contract of Sale").)  Much of the relevant factual background predates the fire but is excessively murky, disputed by the parties, and/or unsubstantiated by admissible evidence or documentation.

A. <u>Execution of the Note and Mortgage</u>

On April 16, 2007, Antoine executed a note in the amount of $495,000.00 (the "Note") whereby he agreed to repay that principal sum, plus interest to the lender, Option One Mortgage Corporation ("Option One"). (ECF No. 27-2, Ex. 1, Note.) The lender secured the Note through a mortgage on the Property, which agreement provided that the borrower, Antoine, was obligated to maintain property insurance or repay the lender for amounts paid for such insurance (the "Mortgage" or "Mortgage Agreement"). (ECF No. 27-3, Ex. 2, Mortgage Agmt. ¶¶ 2, 5, 7, 8.) In addition, both the Note and the Mortgage securing the Note provide that the lender "may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission." (*Id.* ¶ 17; ECF No. 27-2, Ex. 1, Note ¶ 11.) Further, the Mortgage Agreement requires Antoine to obtain hazard or property insurance to cover loss or damage caused by fire or other hazards, and permitted the Lender to obtain insurance to protect the Lender's rights in the property. The Mortgage Agreement also provides: "If there is a loss or damage to the Property, I [Antoine] will promptly notify the insurance company and Lender." (ECF No. 27-3, Ex. 2, Mortgage Agmt. ¶¶ 2(A), 5.)

Under the ASIC insurance policy, the "Named Insured (Mortgagor)" under the policy is "Jean B Antoine," and the

4

"Mortgagee" is "Ocwen Loan Servicing, LLC," and "Its Successors and/or Assigns." (ECF No. 26-3, Ex. B, at 6.) In addition, clause 15 of the ASIC insurance policy provides:

> Mortgage Clause. The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under the policy shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

> *Id.* ¶ 15.

B. First State Court Proceeding Involving Foreclosure

According to the Complaint, Antoine received a notice of default on his Mortgage in October 2007. (ECF No. 13, Compl. 3, ¶ 15.) Thereafter, Antoine failed to cure the default, causing all outstanding principal and interest to be accelerated pursuant to the terms of the Note. (ECF No. 27-2, Ex. 1, Note ¶ 7(B).) Option One commenced a foreclosure action against Antoine on December 13, 2007. (Compl. ¶ 19; ECF No. 27, Def. Mem. ¶ 6; *Option One Mortg. Corp. v. Antoine*, No. 45568/2007 ("Foreclosure Action").) In early 2008, Option One assigned Antoine's defaulted Mortgage to Wells Fargo. (Compl. ¶ 21.) Wells Fargo's failure to prosecute the Foreclosure Action led to its dismissal on February 27, 2014. (ECF No. 13-5, Ex. E, Order of Dismissal.)

C. ASIC Insurance Policy and Resulting Fire on the Property

Ocwen purchased a residential property policy from ASIC, which was effective between July 8, 2013 until July 8, 2014 to insure the Property up to the liability limit of $494,460. (ECF No. 26-3, Ex. B, Insurance Policy 6.) Ocwen obtained the insurance after Antoine failed to do so, in accordance with the terms of the Mortgage Agreement, and Ocwen paid the premium amount of $4,153.00. (*Id.* at 4, 6.)[2] Under the Mortgage Agreement, Antoine was obligated to take out hazard or property insurance and/or to repay the lender for the cost of such insurance on the Property. (ECF No. 27-3, Ex. 2, Mortgage Agmt. ¶¶ 2, 11(B).) On or about June 27, 2014, while the Policy was effective, a fire allegedly occurred on the Property. (ECF No. 13, Compl. 5, ¶ 33.) Although there is no supporting evidence before the court, defendant asserts that Antoine purportedly filed a claim with ASIC to collect insurance proceeds under the Insurance Policy on March 31, 2015, approximately nine months after the fire allegedly occurred. (ECF No. 27, Def. Mem. ¶ 10.) Plaintiffs dispute the claim date in their reply memorandum, but provide no evidence on the issue. (ECF No. 29, Reply Mem. 4.) In apparent violation of Antoine's obligation under the ASIC policy and the Mortgage Agreement, it appears that Antoine did not "immediately" or "promptly notify"

---

[2] As noted previously, Wells Fargo is the assignee of Ocwen Loan Servicing, LLC.

ASIC and Ocwen of the fire occurring on the Property. (*Id.*; ECF No. 26-3, Ex. B, ¶ 5; ECF No. 27-3, Ex. 2, Mortgage Agmt. ¶ 5.) Neither party has presented evidence from ASIC regarding the claim.

## D. Sale of the Property to BSD

Furthermore, on December 4, 2014, apparently without requesting and obtaining written permission from Wells Fargo as required pursuant to the Mortgage Agreement, Antoine sold the property to BSD pursuant to a Contract of Sale. (*Id.* ¶ 17.) According to the Contract of Sale, BSD agreed to pay $30,000 to Antoine, and $495,000 constituted the unpaid principal on the existing mortgage. (ECF No. 13-8, Ex. H, Deed Transfer from Antoine to BSD at 2; ECF No. 26-4, Ex. C, Contract 2-3). Although the Contract of Sale apparently indicates that BSD, as the purchaser, assumed the "principal amount unpaid on the existing mortgage on the date hereof," *i.e.* $495,000, there is no indication that BSD actually assumed the existing mortgage or, as noted above, notified or obtained authorization from the lender of the purported sale. (ECF No. 26-4, Ex. C, Contract 2-3.) Indeed, Antoine's inadmissible "Affidavit," which is not submitted under penalty of perjury, but is discussed further below, states that "by selling the deed [Antoine is] still liable for the mortgage between [Antoine] and the bank." (ECF No. 26-7, Ex. F, Antoine Affidavit.)

Plaintiffs' submissions are inconsistent and confusing with respect to the purchase price of the Property. (*See* ECF No. 26-7, Ex. F, Antoine Affidavit at 2 (stating that Antoine agreed to sell his interest in the Property for $25,000.00, not $30,000.00); ECF No. 13, Compl. 5, ¶ 34 (alleging that BSD paid Antoine $10.00 for the Property); ECF No. 26-4, Ex. C, Contract 2-3 (listing closing balance as $30,000).)

In addition to executing a Contract of Sale with BSD, on December 4, 2014, Antoine also allegedly executed (1) a statutory short form POA designating Katz as his agent, authorizing Katz to conduct all enumerated transactions listed therein; (2) an agreement in which Antoine allegedly agreed to equally divide the insurance proceeds from the claim for fire damage between Antoine and BSD ("Insurance Proceeds Agreement"; and (3) a statement allegedly memorializing Antoine's sale of the Property to BSD. (*See generally* ECF No. 26-2, Executed POA, filed 03/12/2019, at 2-7; ECF No. 26-6, Ex. E, Insurance Proceeds Agreement at 2; ECF No. 26-7, Ex. F, Antoine Affidavit at 2.) According to plaintiffs, on March 31, 2015, after Antoine had sold the Property to BSD, Antoine filed a claim for fire damage with ASIC to collect insurance proceeds based on the fire that allegedly occurred on June 27, 2014. (ECF No. 27, Def. Mem. ¶ 10.)

As Wells Fargo correctly notes, the purported "Affidavit" memorializing the sale of the Property constitutes inadmissible evidence, upon which the court cannot rely. (ECF No. 26-7, Antoine Affidavit; Fed. R. Civ. P. 56(c)(4).) The so-called "Affidavit" is not a true affidavit or declaration: it is neither a sworn statement, nor a declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746. As such, under prevailing Second Circuit law, the "Affidavit" must be disregarded by this court in this partial summary judgment proceeding. *See LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999) ("[A] district court should disregard an unsworn letter in ruling on a summary judgment motion[.]"); *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1032-33 (2d Cir. 1997), *cert. denied*, 522 U.S. 1149 (1998) ("[U]nsworn letters do not satisfy the requirements of Fed. R. Civ. P. 56(e) and therefore cannot defeat [a] motion for summary judgment."); *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 80 (2d Cir. 2012) (affidavits that fail to adhere to Rule 56 requirements "constitute inadmissible hearsay"). Should admissible evidence obtained during discovery uncover the actual, true amount that Antoine received in exchange for the sale of the Property, the parties should promptly inform the court.

Similarly, as Wells Fargo notes, there is another problematic discrepancy with respect to Antoine's purported agreement to transfer insurance proceeds to BSD. According to the Insurance Proceeds Agreement, Antoine assigned half of the insurance proceeds to BSD, whereas the inadmissible "Affidavit" states that Antoine agreed to sell his deed and "all of [his] interest to the property" to an unspecified purchaser. (ECF No. 26-6, Ex. E, Insurance Proceeds Agmt; ECF No. 26-7, Ex. F, Antoine Affidavit.) Further, the Complaint alleges that, "Antoine agreed to transfer *any proceeds received from his insurance claim* with AISC [sic] to BSD." (ECF No. 13, Compl. ¶ 35.) (emphasis added). Assuming *arguendo* that Antoine could have transferred the Property without notifying defendant, it is unclear whether Antoine intended to transfer half or all of his interest in the insurance proceeds to BSD.

Plaintiffs briefly suggest, but do not expound upon, a laundry list of potential hearsay exceptions that would arguably permit the court to consider plaintiffs' inadmissible exhibits, including Rules 801(d)(1)(B) (a declarant-witness's prior statement); 803(5) (recorded recollection); 803(15) (statement affecting an interest in property); and 804(b)(3) (statement against interest) of the Federal Rules of Evidence. (ECF No. 29-2, Reply Mem. 7.) None of these grounds are applicable here or overcome the Federal Rules of Evidence and binding case law

against the court's reliance on inadmissible hearsay statements. First, Rule 801(d)(1)(B), which applies to situations where a declarant testifies and is subject to cross-examination about a prior statement, is clearly not germane here.  Fed. R. Evid. 801(d)(1)(B).  Second, a recorded recollection under Rule 803(5) "may be received as an exhibit only if offered by an adverse party," which is not the case here.  Fed. R. Evid. 803(5). Third, a statement in a document that affects an interest in property may be admissible "if the matter stated was relevant to the document's purpose – *unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document*."  Fed. R. Evid. 803(15) (emphasis added). Given the discrepancies that the court has identified, the court finds that the exhibits are not admissible under plaintiffs' proffered hearsay exception.  Fourth, plaintiffs have not established that the inadmissible exhibits are statements against plaintiffs' interest pursuant to Rule 804(b)(3), which requires that the declarant be unavailable as a witness under Rule 804(a).  Fed. R. Evid. 804(a), b(3).

Finally, Wells Fargo challenges whether Antoine could have agreed to transfer the insurance proceeds, as Antoine arguably had no rights in the insurance proceeds to assign due to his breach of the Mortgage Agreement.  (ECF No. 27, Def. Mem.

¶ 26.)  This specific issue is not presently before the court on this partial summary judgment proceeding regarding the POA.

   E. Discharge of the Mortgage by Second State Court Proceeding

        On January 25, 2016, BSD filed an action to quiet title to the Property in New York Supreme Court, Kings County, and to extinguish the Mortgage.  (ECF No. 13-9, Ex. I, Plaintiff's Complaint to Cancel and Discharge Mortgage, filed 12/14/2018, at 5, ¶ 24; ECF No. 27, Def. Mem. ¶ 12.)  On April 6, 2017, the Supreme Court of the State of New York, County of Kings, granted BSD's motion for default judgment and discharged the mortgage.[3]  (ECF No. 13-10, Ex. I, Default Judgment, filed 12/14/2018, at 8; ECF No. 27, Def. Mem. ¶ 12.)  On July 11, 2017, BSD transferred ownership of the Property via recorded deed to McIntosh 2747 LLC in exchange for $210,000.  (ECF No. 27, Def. Mem. ¶ 12; ECF No. 27-5, Deed.)

   F. Present Proceeding Regarding Insurance Proceeds

        On September 17, 2018, Antoine and BSD filed a civil action against ASIC in the Kings County Supreme Court, seeking to recover the fire claim proceeds, which totaled $78,325.67; plaintiffs named ASIC as defendant in said action because ASIC had initiated disbursement of the insurance proceeds by way of a check that included Ocwen Loan Servicing, LLC as a payee, along

_____

[3] Importantly, the parties have not indicated whether the Note was also discharged.

with Antoine.  (ECF No. 1-3, Plaintiffs' Petition in State

Court, filed 10/18/2018, at 2, ¶ 1.)  ASIC thereafter removed

the suit to federal court, pursuant to 28 U.S.C. §§ 1332, 1441,

and 1446.  (ECF No. 1, Notice of Removal Action, filed

10/18/2018, at 1.)  After ASIC objected to proceeding without

Ocwen Loan Servicing, LLC, plaintiffs amended their Complaint to

include Wells Fargo, as assignee of Ocwen Loan Servicing, LLC.

(ECF No. 5, Motion to Stay, filed 10/26/2018, at 2; ECF No. 10,

Plaintiffs' December 7, 2018, Letter, filed 12/07/2018, at 1.)

On January 25, 2019, the parties submitted a joint

"stipulation" to the court, in which they stated that, *inter

alia*, (i) plaintiffs allege that Antoine had sold only a part of

his interest in the insurance proceeds to BSD; (ii) plaintiffs

allege that BSD had not sold any of its interest in the

proceeds; and (iii) Wells Fargo alleges it had not lost its own

interest in the proceeds.  (ECF No. 22, Proposed Joint

Stipulation, at 3.)  According to Wells Fargo, "[i]t was only

when Plaintiff BSD sign[ed] the proposed Stipulation and Order .

. . that it was even discovered that the POA exist[ed]."  (ECF

No. 27, Def. Mem. at 15 ¶ 39.)  But this appears to have been an

oversight on Wells Fargo's part, as Antoine's and BSD's filing

in Kings County Supreme Court does not conceal the fact that

Katz was proceeding in this and the state court action by way of

a POA: indeed, Katz's Affidavit, which was filed in state court,

states that Katz is "a member of Plaintiff BSD 260 LLC ('BSD')
and ha[s] a Power of Attorney to appear in this matter on behalf
of Plaintiff Jean Baptiste Antoine ('Antoine').  [Power of
Attorney annexed hereto as Exhibit 'A']."  (ECF No. 1-5, Ex. 4,
Katz Affidavit.)

Antoine has not been active in this litigation.  On
February 5, 2019, counsel for defendants Wells Fargo and ASIC
"requested a new POA which would properly grant Plaintiff BSD
authority to appear in this action on behalf of Plaintiff
Antoine," but BSD allegedly informed defendants that it was
unable to obtain a new POA.  (ECF No. 27, Def. Mem. at 8 ¶ 19.)
As indicated above, on February 20, 2019, the court set a
briefing schedule on the sole issue of the validity of the
disputed POA.  (ECF No. 25, Dkt. Entry dated February 20, 2019.)

In its memorandum, Wells Fargo challenges the POA on
various grounds: "the exhibits provided by Plaintiff BSD are
inadmissible evidence, Plaintiff BSD makes inconsistent factual
assertions, a significant portion of time has elapsed since [the
POA's] execution, and the POA itself is overly broad and . . .
inconsistent with the purpose of the POA as alleged."  (ECF No.
27, Def. Mem. 5, ¶ 2.)  Additionally, Wells Fargo suggested that
BSD likely exerted "undue influence or fraud" in obtaining the
power of attorney from Antoine.  (*Id.* at 18-19, ¶ 46.)  Wells
Fargo alleges that the POA is flawed because certain factual

discrepancies in BSD's filings demonstrate that something was amiss during the POA's execution. Chief among these supposed deficiencies is the amount that BSD paid Antoine for the Property. (*Id.* at 16, ¶ 40.) Therefore, Wells Fargo asserts, BSD should not be allowed to pursue the underlying litigation. (*Id.* at 20.)

In response, BSD claims that the POA should be honored pursuant to New York's General Obligations Law, which provides that a properly executed statutory short form power of attorney should be enforced, unless there is "reasonable cause" to doubt its validity. *See generally* N.Y. Gen. Oblig. Law § 5-1504. BSD requests that the court analyze the "'plain and reasonable meaning of the words used'" in the POA, as well as the other documents executed by BSD and Antoine in connection with the Property sale on December 4, 2014. (ECF No. 26-1, Pl. Mem. 5 (quoting *Benderson Dev. Co. v. Schwab Bros. Trucking, Inc.*, 64 A.D.2d 447, 455 (4th Dep't 1978).)

The parties also dispute the meaning of section (g) of the POA, which states that Antoine delegated authority to Katz "for the purpose of litigating, selling and conveying" the property. (ECF No. 26-2, Executed POA 4.) Wells Fargo maintains that this clause either does not authorize Katz to represent Antoine in "litigation involving hazard claim proceeds," or, in the alternative, implies that Katz's authority

15

pursuant to the POA was terminated once BSD sold the Property. (ECF No. 27, Def. Mem. 19, ¶¶ 49-50.) Conversely, BSD asserts that this language simply means that Antoine authorized Katz, and, by extension, BSD to "take any action necessary to discharge the alleged rights of Defendant Wells Fargo as well as any claims asserted by Wells Fargo . . . including its alleged entitlement to the insurance proceeds at issue." (ECF No. 26-1, Pl. Mem. 6.)

For the reasons set forth herein, after evaluating the unambiguous terms of the POA and the parties' arguments, the court concludes that the POA at issue does not indicate that it was executed under fraudulent pretenses. In defendant's opposition to plaintiffs' motion for partial summary judgment, defendant has not presented admissible evidence to create a genuine dispute as to a material fact, *i.e.* the validity of the POA. Thus, the court **grants** plaintiff's motion for partial summary judgment regarding the validity of the POA, however, the court's conclusion regarding the validity of the POA does not resolve the disputed issues regarding the proceeds of ASIC's policy. Consequently, Katz may exercise the authority delegated to him by Antoine, pursuant to the POA, to represent Antoine's interests in the underlying action regarding disputed insurance proceeds.

As noted above, the court expressly reserves decision regarding which party or parties are entitled to the insurance proceeds at issue. *Acha v. Beame*, 570 F.2d 57, 62 (2d Cir. 1978) ("[W]here . . . a partial summary judgment is rendered with respect to only part of the relief sought by the appellants, and where consideration of further relief is specifically reserved, judgment is neither 'final' nor on an entire 'claim.' Accordingly, there can be no certification of such a partial summary judgment pursuant to Rule 54(b).").

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *cert denied*, 565 U.S. 1260 (2012). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986) (internal citations omitted).

When moving for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), *cert. denied,* 534 U.S. 1065 (2001). A moving party may indicate the absence of a factual dispute by, *inter alia*, "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, "the nonmoving party may not rest upon mere conclusory allegations or denials." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)). Rather, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The standard is the same when cross motions for summary judgment are made. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001); *Estrada v. St. Francis Hosp.*, No. 13-cv-1243, 2015 WL 6965202, at *8 (E.D.N.Y. November 10, 2015). The court must examine each party's motion independently, and "in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121 (citations omitted).

## DISCUSSION

## I. Statutory Short Form Power of Attorney

### A. Scope

As an initial matter, New York General Obligations Law Article 5, Title 15 governs statutory short form general power of attorneys. *See, e.g.*, *Martinez v. United States*, No. 07-CV-2473 (NGG), 2012 U.S. Dist. LEXIS 9472, at *18-20 n.6 (E.D.N.Y. Jan. 26, 2012). In interpreting the content of a POA, New York courts have noted that a "power of attorney should be construed according to [its] natural meaning." *Alizio v. Perpignano*, 666 N.Y.S.2d 39 (2d Dep't 1997) (citing *Benderson Dev. Co.*, 409 N.Y.S.2d at 893). "[U]nder New York law, in the absence of ambiguous terms, courts have no occasion to resort to a consideration of the circumstances existing when the [POA] was entered into." *See Pantone, Inc. v. Esselte Letraset, Ltd.*, 691 F. Supp. 768, 776 (S.D.N.Y. 1988); *see also Benderson Dev. Co.*,

19

409 N.Y.S.2d at 893 (courts must consider both the "apparent purpose" of the POA as well as its "plain and reasonable meaning [given] the circumstances").

A power of attorney authorizes another party—an "agent"—to act in the stead of another—the "principal"—as his or her attorney in fact. *See Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F. Supp. 360, 374 (S.D.N.Y. 1992) (citing *Zaubler v. Picone*, 100 A.D.2d 620 (2d Dep't 1984)). An attorney in fact is "an alter ego of the principal and is authorized to act with respect to any and all matters on behalf of the principal," except for "acts which, by their nature, by public policy, or by contract require personal performance." *Id.* Accordingly, an agent can perform all acts, absent any express limitations, "as fully as the principal" can. *Romero v. Sjoberg*, 5 N.Y.2d 518 (N.Y. 1959). With limited exceptions, a principal may define the scope of authority he or she wishes to confer. *See* N.Y. Gen. Oblig. Law § 5-1502(A)-(N). New York General Obligations Law Article 5, Title 15 enumerates the wide array of functions that an agent with a statutory short form power of attorney can perform on the principal's behalf, including "real estate transactions," § 5-1502(A), and "claims and litigation," § 5-1502(H).

With respect to real estate matters in particular, Section 5-1502(A) provides that the attorney in fact can "settle

. . . *any* claim existing in favor of, or against, the principal based on or involving *any* real estate transaction." *See* N.Y. Gen. Oblig. Law § 5-1502(A)(10) (emphasis added). This statutory provision has been construed to encompass the agent's broad powers to "sell, to exchange, to convey either with or without covenants, to quit-claim, to release, to surrender, [or] to mortgage." *Madison Park Investors LLC v. Atlantic Lofts Corp.*, 941 N.Y.S.2d 538, 538 (Kings Cnty. Sup. Ct. 2011). Further, an attorney in fact and a principal share co-extensive power to act, as a principal does not cede his authority to act, even though he has given his agent authority to act. N.Y. Gen. Oblig. Law § 5-1513 ("CAUTION TO THE PRINCIPAL: You do not lose your authority to act even though you have given your agent similar authority."); *Arens v. Shainswit*, 37 A.D.2d 274, 277 (1st Dep't 1971) ("[W]hen a man has power as owner or principal to do any act or thing in his own right, he may do it by another.") (citing *Lowenstein v. Flauraud*, 82 N.Y. 494, 497 (N.Y. 1880).

B. Validity and Execution

Wells Fargo asserts that the POA is invalid—and thus unenforceable—on the ground that Wells Fargo has "reasonable cause" not to honor the POA. (ECF No. 27, Def. Mem. 14, ¶ 36; *see also* N.Y. Gen. Oblig. Law § 5-1504(1)(a)(7).) Specifically, Wells Fargo asserts that it has "actual knowledge or a

21

reasonable basis for believing that the power of attorney was procured through fraud, duress or undue influence" due to certain alleged inconsistencies in BSD's earlier filings. (ECF No. 27, Def. Mem. 14, ¶ 36.)

Under New York law (the "statute"), a statutory short form POA must: (1) be signed and dated by a principal with capacity; (2) include the signature of the principal duly acknowledged in the manner prescribed for the acknowledgment of a conveyance of real property; and (3) contain a cautionary disclaimer to the principal regarding the extensive powers the POA delegates to the agent. N.Y. Gen. Oblig. Law § 5-1501B(1)(b) and (d). With respect to the first element, "capacity" is defined as the "ability to comprehend the nature and consequences of the act of executing and granting, revoking, amending or modifying a power of attorney, any provision in a power of attorney, or the authority of any person to act as agent under a power of attorney." *Id.* § 5-1501(2)(c).

Under New York law, a power of attorney is presumptively valid when "'circumstances surrounding its presentation would not have put a reasonable person on notice that something was amiss.'" *Oliveto Holdings, Inc. v. Rattenni*, 973 N.Y.S.2d 321, 323 (2d Dep't 2013) (quoting *Neildan Constr. Corp. v Angona*, 619 N.Y.S.2d 590 (2d Dep't 1994)). As the Second Circuit has stated, failure to use the statutory

short form power of attorney does not necessarily render the power of attorney invalid: "Technical departures from the statutory short form requirements . . . d[o] not invalidate the [parties'] power of attorney." *See Robert L. Gordons, LLC v. U.S. Bank Nat'l Ass'n*, 724 F. App'x 18, 21 (2d Cir. 2018).

Further, "a party's competence is presumed, and in order to set aside a transfer of property on the ground of lack of capacity," the party challenging the POA's validity must establish that the principal "did not understand the nature of the transaction at the time of the conveyance as a result of his or her mental disability." *Mastrantoni v. Mancini*, 171 A.D.3d 908, 909 (2d Dep't 2019) (quoting *Buckley v. Ritchie Knop, Inc.*, 40 A.D.3d 794, 795 (2d Dep't 2007)); *accord In re Delaney*, 170 A.D.3d 1008, 1009 (2d Dep't 2019).

In evaluating the validity of a POA, a court may consider direct testimony, the POA itself, as well as extrinsic evidence. *Sacks v. Deutsche Bank Nat'l Trust Co.*, 12-CV-6338 (ENV)(SIL), 2019 WL 1586859, at *4 (E.D.N.Y. Apr. 12, 2019) (court considered testimony, a copy of the POA, and signature on principal's driver's license in determining whether a forgery occurred). It is well-settled that the party alleging the principal's incapacity must demonstrate that the principal's mind was "so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the

transaction," *see Sears v. First Pioneer Farm Credit, ACA*, 46
A.D.3d 1282, 1284-85 (3d Dep't 2007), and that "such
incompetency/incapacity existed when [the individual] executed"
the agreement, *see Adsit v. Wal-Mart Stores, Inc.*, 79 A.D.3d
1168, 1169 (3d Dep't 2010). *See also Mastrantoni*, 171 A.D.3d at
909). Similarly, a party challenging a POA on grounds of
forgery must advance "more than a bald assertion of forgery,"
and the "proof of forgery must be 'so clear and convincing as to
amount to a moral certainty.'" *Sacks*, 12-CV-6338 (ENV)(SIL),
2019 WL 1586859, at *3-4 (E.D.N.Y. Apr. 12, 2019).

Only when a third party has "reasonable cause" to
doubt the validity of a statutory short form POA may that third
party refuse to honor the plain language thereof. N.Y. Gen.
Oblig. Law § 5-1504(1). With respect to allegations of "fraud,
duress or undue influence," a third party must have "actual
knowledge or a reasonable basis" for believing that the power of
attorney was procured through fraud, duress or undue influence.
*Id.* § 5-1504(1)(a)(7). New York courts have held that a third
party "is entitled, under the statute, to accept and rely on a
properly executed power of attorney in the absence of *actual
knowledge* that the principal lacked capacity to subscribe it or
was subject to fraud, duress or undue influence in executing it,
unless the bank has actual notice that the instrument has been
terminated or revoked." *Emigrant Bank v. Rosabianca*, 156 A.D.3d

468, 475-76 (1st Dep't 2017) (emphasis added); *Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, 612 F. App'x 17, 20 (2d Cir. 2015).

As with incapacity, the burden of proving fraud, duress, or undue influence is on the party challenging the POA's validity. To combat the presumption of a facially valid POA, a third party "must show that: 'the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency.'" *Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 417 (S.D.N.Y. 1998) (quoting *In re Walther*, 6 N.Y.2d 49, 188 (N.Y. 1959)); *see also In re Burke*, 441 N.Y.S.2d 542, 548 (2d Dep't 1981).

Here, Wells Fargo asserts that "Plaintiff BSD is the controlling party" and that Antoine is a likely victim of fraud, duress, or undue influence. (ECF No. 27, Def. Mem. ¶ 41.) First, Wells Fargo states that "Plaintiff BSD failed to mention anywhere in its Complaint that it was filing the action on behalf of Plaintiff Antoine based on a POA and that Plaintiff Antoine was not appearing in this action on his own behalf." (*Id*. at 15, ¶ 38.) The court notes, however, that Exhibit 4 to the Notice of Removal, filed on October 18, 2018, is an Affidavit filed by Mr. Katz in state court, in which Mr. Katz affirmed that he is "a member of Plaintiff BSD 260 LLC . . . and ha[s] a Power of Attorney to appear in this matter on behalf of

Plaintiff Jean Baptiste Antoine[.]"  (ECF No. 1-4, Exhibit 4,
Katz Affidavit.)  Based on the record before the court, Wells
Fargo's first argument has failed to establish a factual dispute
regarding whether Antoine was subject to fraud, duress, or undue
influence by BSD.

Second, Wells Fargo notes that BSD's initial complaint
incorrectly stated that BSD had purchased the Property from
Antoine on December 14, 2014, when, in fact, the deed transfer
reflects that BSD had purchased the Property from him 10 days
prior.  (ECF No. 27, Def. Mem. 16, ¶ 40.)  There is, however, no
genuine dispute between the parties that the correct date is
December 4, 2014, not December 14, 2014.  (ECF No. 26, Pl. Mem.
4; ECF No. 27, Def. Mem. 16, ¶ 40.)  The court understands that
BSD's inclusion of "December 14, 2014" in the initial complaint
was a mere typographical error, and Wells Fargo has not
explained why this inadvertent error would constitute reasonable
cause to believe that the POA was procured through fraud,
duress, or undue influence.  *See, e.g. U.S. v. Gasperini*, No.
16-CR-441 (NGG), 2017 U.S. Dist. LEXIS 110623 (E.D.N.Y. July 13,
2017) (finding that the typographical "errors do not appear to
be intentional or reckless misstatements").  Given that
negligence or error are insufficient to meet the requirement of
a deliberate falsehood, Wells Fargo's contention concerning the

typographical errors fail to create a factual dispute regarding the POA's validity.

Third, Wells Fargo notes that, although BSD states that Antoine received $30,000.00 for the Property, three of plaintiff's exhibits arguably conflict as to the amount Antoine was paid for the Property (*see* ECF No. 26-4, Ex. C at ¶ 4(e); ECF No. 26-5, Ex. D; ECF No. 26-7, Ex. F at 2). (ECF No. 27, Def. Mem. 16, ¶ 40.) BSD has clarified that it paid Antoine $30,000.00, (*see* ECF No. 26-1, Pl. Mem. 4), and has submitted supporting documentation, (*see* ECF No. 26-4, Contract of Sale at 3). As with the second alleged discrepancy identified by Wells Fargo, this discrepancy regarding the amount paid by BSD to Antoine does not undermine the POA's validity.

Despite Wells Fargo's assertion that "it appears *prima facie* that Plaintiff BSD is the controlling party," (ECF No. 27, Def. Mem. ¶ 41), the court finds that Wells Fargo has not presented sufficient evidence that it has "actual knowledge or a reasonable basis for believing that the power of attorney was procured through fraud, duress or undue influence" or that the POA is otherwise invalid. N.Y. Gen. Oblig. Law § 5-1504(1)(a)(7); *Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 417 (S.D.N.Y. 1998) (quoting *In re Walther*, 6 N.Y.2d 49, 188 (N.Y. 1959)); *see also In re Burke*, 441 N.Y.S.2d 542, 548 (2d Dep't 1981); *Emigrant Bank v. Rosabianca*, 156

A.D.3d 468, 475-76 (1st Dep't 2017) (emphasis added); *Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, 612 F. App'x 17, 20 (2d Cir. 2015).

**Indeed**, it is important to recognize the very reason for the New York legislature's codification of the statutory short form POA.  As a state appellate court has stated:

> The statutory short form power of attorney was created by the Legislature in 1948 to assure that the grant of authority given by a principal to an agent would not be thwarted by a third party's unreasonable refusal to accept the power of attorney . . . Until that time, refusal by financial institutions to accept general powers of attorney had been a common occurrence[.]

*Emigrant Bank v. Rosabianca*, 156 A.D.3d 468, 475 (1st Dep't 2017).

Wells Fargo next takes issue with the technical aspects of the POA.  Specifically, Wells Fargo asserts that it is "suspicious" that BSD and Antoine used the statutory short form POA they did because "there are short form real estate POA's [sic] that could have been used instead."  (ECF No. 27, Def. Mem. 17, ¶ 41.)  Suspicions regarding the use of a statutory short form POA are sufficient to create an issue of fact regarding the validity of the POA as a matter of fact or law.  Indeed, Wells Fargo cites no case law or other support for its position.  As noted above, the Second Circuit has made clear that adherence, or lack thereof, to technical requirements of a

POA is not dispositive in determining the validity of a power of attorney. *Robert L. Gordons, LLC*, 724 F. App'x at 21 (affirming the district court's holding that New York law "did not provide that use of the statutory form was mandatory or that any form deviating from the requirements set forth in the statute would be invalid").

Wells Fargo also asserts that the POA is invalid due to its alleged ambiguity. In particular, Wells Fargo argues that section (g) of the POA "does not explicitly or even vaguely suggest that Plaintiff BSD has the authority to appear on Plaintiff's (sic) Antoine's behalf in litigation involving insurance proceeds, which are separate and apart from litigation involving the selling and conveying of the subject Property." (ECF No. 27, Def. Mem. 17, ¶ 41.) This argument also fails to establish that the POA is invalid. In section (f)of the POA, Antoine indicated that the POA included all of the items enumerated in section (f)(A)-(P) by initialing "JBA" in front of "(P)," which reads, "EACH of the matters identified by the following letters 'A-P.' You need not initial the other lines if you initial line (P)." (ECF No. 26-2, Ex. A, POA 2-3.) Lines A through P expressly grant authority for Katz to handle, *inter alia*, "(A) real estate transactions," "(F) insurance transactions," and "(H) claims and litigation." (*Id.*) Further, section (g) provides that the POA "is limited for the purpose of

litigating, selling and conveying" the Property, located at 560 Fountain Avenue, Brooklyn, NY 11208. (ECF 26-2, Executed POA 4.) Contrary to Wells Fargo's assertion that "something is amiss here," the court cannot conclude, based on the foregoing clauses of the POA, that the POA is unenforceable due to ambiguity, and Wells Fargo has cited no case law to support its position.

Even if the court were to assume that Antoine intended for the section (g) modification clause to curtail the effect of the preceding paragraph, the court would still conclude that the POA authorizes Katz to proceed in the present litigation because New York courts have viewed litigation concerning insurance proceeds in connection with real property as litigation concerning the property. *See Bank of India v. Wig & Myers, P.C.*, 257 A.D.2d 183, 190 (1st Dep't 1999) (describing insurance recovery as one method of protecting creditor's interest in real property); *Badillo v. Tower Ins. Co.*, 92 N.Y.2d 790, 794 (N.Y. 1999) (describing same with respect to personal property). Furthermore, the "natural meaning" of the section (g) modification clause supports this view. Here, the court finds that the natural meaning of section (g) is that Antoine authorized Katz to pursue litigation concerning the Property, including insurance litigation concerning the Property. *Alizio*, 666 N.Y.S.2d at 39 (internal quotations omitted).

The court notes that the POA contains warnings that tend to rebut any inference that the POA was the product of mistake or fraud. In the first paragraph of the first page of the POA, a bold-faced disclaimer reads: "CAUTION TO THE PRINCIPAL: Your Power of Attorney is an important document." (ECF 26-2, Executed POA 2.) Likewise, at the top of the first page of the Contract of Sale, which is part of the circumstances surrounding the POA's execution, a "Warning" reads, in relevant part: "CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT." (ECF 26-4, Contract of Sale at 2.) Because "a party's competence is presumed," *Mastrantoni*, 171 A.D.3d at 909, and because defendant has failed to make a showing to the contrary, the evidence before the court compels the conclusion that Antoine knew what he was signing. Ultimately, the warning language is clear and unambiguous, there is no evidence before the court that Antoine was the victim of fraud by Katz, and none of defendant's arguments demonstrates "irregularities sufficient to 'put a reasonable person on notice that something was amiss.'" *Rattenni*, 973 N.Y.S.2d at 323 (quoting *Neildan Constr. Corp.*, 619 N.Y.S.2d at 590). *Cf. U.S. Bank Nat'l Ass'n v. Gestetner*, 902 N.Y.S.2d 247, 249 (3d Dep't 2010) (crediting "uncontradicted" allegations of forgery and dissimilar signatures as two bases, among others, for concluding that "something was amiss"). Lastly, the facial validity of an

31

instrument can serve to rebut allegations of fraud. *See, e.g.*, *Wells Fargo Bank, N.A. v. O'Berry*, 50 N.Y.S.3d 29 (Queens Cnty. Sup. Ct. 2016) (dismissing defendants' fraud argument on the ground that the mortgage loan at issue "was advanced in reliance upon a power of attorney that was lawful on its face and properly acknowledged"). Here, the adherence of the disputed POA to the requirements of state law, including the prominent warnings, supports the POA's validity.

### C. Termination

Wells Fargo also contends that the POA should be invalidated because "a significant portion of time has elapsed since its execution, and the POA [] seems to be have [sic] no finite term[.]" (ECF No. 27, Def. Mem. ¶ 2.) Wells Fargo cites no case law for its contention that the passage of a certain number of years functionally terminates the POA. The passage of time is categorically *not* an event that terminates an otherwise valid POA under the relevant statute, and the court rejects defendant's bald assertion. N.Y. Gen. Oblig. Law § 5-1511. Wells Fargo has not alleged that it has received actual notice that the POA has been terminated or revoked, *see Emigrant Bank v. Rosabianca*, 156 A.D.3d 468, 475-76 (1st Dep't 2017), nor has it alleged that the principal, Antoine, has died, become incapacitated, revoked Katz's authority, or any of the other statutory events that could operate to terminate a facially

valid POA.  *See generally* N.Y. Gen. Oblig. Law § 5-1511; *Heath v. Banks*, No. 15-CV-4228 (CBA) (MDG), 2016 U.S. Dist. LEXIS 136648, at *10 (E.D.N.Y. Sep. 30, 2016) (a POA naturally expires upon the death of the principal).

Wells Fargo next asserts that the POA should be considered invalid because its purpose is no longer "active" because the POA's purpose was accomplished once BSD sold the property to another party, McIntosh.  (ECF No. 27, Def. Mem. 19, ¶¶ 49-50.)  Again, Wells Fargo cites no case law in support of its position.

The applicable New York statute provides that a power of attorney terminates when its purpose is accomplished.  *See* N.Y. Gen. Oblig. Law § 5-1511(1)(g).  On its face, however, the POA grants Katz authority to conduct "insurance transactions" as well as "claims and litigation" concerning the Property.  (ECF No. 26-2, POA 2-3.)  Although Wells Fargo asserts, without citing any legal authority, that section (g) of the POA "limits the authority of the POA to 'the purpose of litigating, selling and conveying concerning the property'" and thus the POA does "not apply to litigation involving hazard claim proceeds," this assertion, without more, does not establish that the POA was terminated once the property was sold to McIntosh.  (*Id.*; ECF No. 27, Def. Mem. ¶ 49.)

Crucially, Wells Fargo fails to explain why, pursuant to the decisions in *Bank of India* and *Badillo*, *supra*, the POA should not be read to apply to litigation involving the insurance proceeds at issue, which "concern[] the property." (ECF No. 26-2, POA 2-3.) As plaintiffs correctly note, "Antoine's interest in the [insurance] proceeds was not extinguished by virtue of the sale of the subject premises to BSD nor does the consideration for the sale of the property have any relationship . . . to a dispute regarding the parties['] insurable interest in the proceeds at the time of the fire . . . ." (ECF No. 29-2, Reply Mem. 10.) In other words, the sale of the Property cannot be read to restrict the POA's scope or terminate the POA. *Cf. Friedman v. Fife*, 692 N.Y.S.2d 61, 63 (1st Dep't 1999) (concluding that the agency relationship between the parties was explicitly limited to a sale and thus terminated once the transaction had concluded). Thus, the court finds that Wells Fargo has not established, as a matter of law, that the POA has been terminated.

## CONCLUSION

For the foregoing reasons, and based on the admissible evidence proffered by the parties, the court finds that: (i) defendant Wells Fargo has failed to establish that a triable issue of fact exists regarding the POA's validity based on purported fraud by Katz or BSD, duress, or undue influence

over Antoine; and (ii) a natural reading of the plain and reasonable language of the facially valid POA confers upon Katz the authority to handle "real estate transactions," "insurance transactions," and "claims and litigation," such that Katz may proceed in the instant litigation on Antoine's behalf. Therefore, the court **grants** plaintiffs' Rule 56 motion for partial summary judgment that the POA is valid and enforceable, but expressly does not rule on the disposition of the insurance proceeds at issue in this litigation. The court orders that the caption be amended to reflect that the plaintiffs are "Jean Baptiste Antoine, by his attorney in fact Joseph Katz, and BSD 260 LLC." *Buckley v. Ritchie Knop, Inc.*, 40 A.D.3d 794 (2d Dep't 2007).

**SO ORDERED.**

Dated:    February 7, 2020
          Brooklyn, New York


                                    _____/s/_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York